No. 91,113

JIMMIE R. BRYANT, *Appellant,* v. STATE OF KANSAS, *Appellee.*

(118 P.3d 685)

Opinion filed September 2, 2005.

*Randall L. Hodgkinson,* deputy appellate defender, argued the cause and was on the brief for appellant.

*Ernest H. Richardson,* acting county attorney, argued the cause, and *Phill Kline,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Jimmie R. Bryant pled guilty in February 2002 to one count of attempted manufacture of methamphetamine, a drug severity level 1 offense. He was sentenced to 81 months' imprisonment. There was no direct appeal. In May 2003 Bryant filed a K.S.A. 60-1507 motion seeking to have his sentence vacated and the case remanded for resentencing pursuant to *State v. Frazier,* 30 Kan. App. 2d 398, 42 P.3d 188, *rev. denied* 274 Kan. 1115 (2002). The district court denied the motion. The Court of Appeals affirmed. This court granted defendant's petition for review to consider the single question of whether a defendant may assert the rule from *State v. McAdam,* 277 Kan. 136, Syl. ¶ 3, 83 P.3d 161

(2004), as to identical offenses, in a collateral challenge claiming that the defendant could only be sentenced to the lesser penalty.

Bryant pled guilty to one count of attempt to manufacture methamphetamine in violation of K.S.A. 65-4159(b)(1), a severity level 1 drug felony. Pursuant to the plea agreement, the State dismissed four remaining charges: (1) possession of pseudoephedrine/ephedrine in violation of K.S.A. 65-7006, a severity level 1 drug felony; (2) possession of methamphetamine in violation of K.S.A. 65-4160(a), a severity level 4 drug felony; (3) possession of drug paraphernalia in violation of K.S.A. 65-4152(a)(3), a severity level 4 drug felony; and (4) criminal possession of a firearm in violation of K.S.A. 21-4204(a)(3), a severity level 8 nonperson felony. Following the plea agreement, the State and defendant jointly then sought a downward departure in the sentence from the presumptive standard of 162 months' to 81 months' imprisonment. After acknowledging the plea agreement, the district court judge sentenced defendant to 81 months' imprisonment.

Bryant's 60-1507 motion seeks to have his sentence vacated and the matter remanded for resentencing pursuant to *Frazier*, 30 Kan. App. 2d 398. The trial court denied relief. Bryant appealed to the Court of Appeals where he argued that *McAdam* controlled and sought to have the trial court's decision reversed and the matter remanded for resentencing to a severity level 3 drug felony. The Court of Appeals affirmed. *Bryant v. State*, No. 91,113, unpublished opinion filed July 23, 2004.

In *Frazier*, a direct appeal, the Court of Appeals had concluded that possession of ephedrine or pseudoephedrine, K.S.A. 65-7006(a), and possession of drug paraphernalia, K.S.A. 65-4152(a)(3), were identical offenses prohibiting possession of ephedrine or pseudoephedrine for use in the manufacture of a controlled substance. 30 Kan. App. 2d at 404-05. The Court of Appeals vacated Frazier's severity level 1 felony sentence and remanded to the district court with directions to impose a sentence for a drug severity level 4 felony.

In *McAdam*, also a direct appeal, this court had held that the elements of conspiracy to manufacture methamphetamine under K.S.A. 65-4159(a) are identical in the context of methamphetamine

to the elements of 65-4161(a), the compounding of illegal substances, and therefore the defendant could only be sentenced to the less severe penalty of the two statutes. The court then vacated McAdam's severity level 1 drug felony sentence and remanded the matter to the district court with directions to impose a sentence for a severity level 3 drug felony as provided for with a violation of 65-4161(a). 277 Kan. at 146-47.

In the present case, the Court of Appeals ordered the parties to brief the question whether the reasoning in *Wilson v. State*, 31 Kan. App. 2d 728, 71 P.3d 1180, *rev. denied* 276 Kan. 974 (2003), applied. In *Wilson*, the Court of Appeals held that *Frazier* "will not be retroactively applied in a K.S.A. 60-1507 collateral attack of an unappealed conviction after a favorable plea agreement." 31 Kan. App. 2d 728, Syl.

The Court of Appeals determined that the facts of the present case were analogous to the facts in *Wilson*, "where the defendant sought to have his sentence reduced from a level 1 drug felony for possession of ephedrine/pseudoephedrine to a level 4 drug felony for possession of drug paraphernalia citing *State v. Frazier*, 30 Kan. App. 2d 398, 42 P.3d 188, *rev. denied* 274 Kan. 1115 (2002)." Slip op. at 4. Continuing its comparison of the present case to *Wilson*, the Court of Appeals stated:

"Subsequently, in *Wilson*, the defendant, who had entered a no contest plea to possession of ephedrine/pseudoephedrine under K.S.A. 65-7006(a), filed a K.S.A. 60-1507 [a collateral attack] motion arguing his sentence was illegal under *Frazier*. This court disagreed and held that where a defendant enters a no contest plea to take advantage of a favorable plea agreement and does not file a direct appeal, he or she cannot collaterally challenge the sentence imposed. 31 Kan. App. 2d at 733-34." Slip op. at 5.

The Court of Appeals then noted:

"Here, the facts are substantially the same procedurally as those in *Wilson*. First, the defendant entered into a plea agreement which resulted in the State dismissing several other charges. In addition, the State joined the defendant in his motion for a downward durational departure. The sentencing court, on September 2, 2002, accepted the plea and imposed the stipulated sentence of 81 months. No direct appeal was taken. Instead, almost nine months later, the defendant filed a K.S.A. 60-1507 motion challenging his sentence." Slip op. at 5-6.

The Court of Appeals then stated:

"It is settled law that state courts are under no constitutional duty to apply their criminal decisions retroactively. See *Wilson*, 31 Kan. App. 2d at 733. Here, the defendant's sentence was final before *McAdam* was decided on January 30, 2004. There is no claim that a new constitutional rule of criminal procedure is at issue, and no one is arguing that the *McAdam* decision stands for the proposition that the defendant could not be convicted of the crime as set out in the plea agreement. We understand there is no right to a lesser sentence when two crimes have the same elements under the United States Constitution. *United States v. Batchelder*, 442 U.S. 114, 60 L. Ed. 2d 755, 99 S. Ct. 2198 (1979). . . .

"The defendant's only right to relief would arise from our Supreme Court's decisions in *State v. Nunn*, 244 Kan. 207, 768 P.2d 268 (1989), and *State v. Clements*, 241 Kan. 77, 734 P.2d 1096 (1987). However, we understand that both *Nunn* and *Clements* were direct appeals and not collateral attacks as is the case here. Neither of those decisions control the question here.

"As in *Wilson*, we decline to hold that *McAdam* applies retroactively to those cases on collateral review because to do so would give the defendant the double benefit of a favorable plea agreement, with a significant downward durational departure and then the benefit of an issue he failed to raise at the trial court or on direct appeal. Similarly, the defendant cannot argue his sentence should have been for a severity level 4 felony [under *Frazier*] for the same reason." Slip op. at 6-7.

In response to the Court of Appeals' order, Bryant now contends to this court that *Wilson* should not be applied because its reasoning was erroneously drawn from *Easterwood v. State*, 273 Kan. 361, 44 P.3d 1209, *cert. denied* 537 U.S. 951 (2002). In *Easterwood*, the principal question was whether *State v. Sophophone*, 270 Kan. 703, 19 P.3d 70 (2001), should be applied so that Easterwood, who had been sentenced in 1996, could have his guilty pleas set aside in a collateral attack. In Sophophone's direct appeal, this court held that the killing of his co-felon by a law enforcement officer as the co-felon was fleeing from an aggravated burglary in which both felons had participated did not support Sophophone's conviction for felony murder. 270 Kan. at 713. "The facts in *Sophophone* were almost identical to Easterwood's situation" with "the deaths in both cases result[ing] from the lawful act of a law enforcement officer." 273 Kan. at 367-68. In reaching its conclusion that *Sophophone* should not be applied, the *Easterwood* court reasoned:

"Felony murder clearly existed when Easterwood pled. A death had occurred during a covered felony. Easterwood was a primary actor in the aggravated robbery and kidnapping, which was necessary to invoke the felony-murder doctrine. He admitted in his plea colloquy that he was guilty. He asked the court to accept the plea agreement. He failed to appeal or challenge the court's acceptance of his plea. We will not now retroactively decide that his plea is void because of a later favorable ruling on the precise issue he voluntarily declined to challenge." 273 Kan. at 382-83.

In a supplemental brief, Bryant now contends that *Easterwood* was an unsuitable source for *Wilson's* reasoning because *Easterwood* was a collateral attack on convictions and Wilson's collateral attack was on his sentence. Bryant argues that Easterwood had waived his right to collaterally attack his conviction by pleading guilty, but that Bryant could attack his illegal sentence at any time pursuant to K.S.A. 22-3504. He now asserts that neither the State nor a defendant can stipulate to an illegal sentence or waive an illegal sentence. We note that this court, in *State v. Barnes*, 278 Kan. 121, 124, 92 P.3d 578 (2004), squarely faced the question whether the defendant's severity level 1 drug felony sentence for manufacture of methamphetamine under K.S.A. 65-4159(a) was an illegal sentence within the meaning of K.S.A. 22-3504(1), applied our decision in *McAdam*, and concluded that it was not.

In addition, Bryant also argued that *Wilson* was wrongly decided because it failed to follow a "critical component" of *Easterwood*. Easterwood had been advised by trial counsel of the range of penalties and, in addition, the potential for an argument that the facts of his case did not subject him to felony murder. In *Wilson*, the Court of Appeals had observed that the "significant difference" between *Easterwood* and *Wilson* "is that there was no discussion by counsel shown of record that Wilson might argue for the *Frazier* result." 31 Kan. App. 2d at 734. The *Wilson* court, however, concluded that the possibility of fighting a *Frazier* issue was outweighed by defendant's advantageous plea, stating:

"It is perfectly logical that with K.S.A. 1999 Supp. 65-7006(a) so new and Wilson facing so many counts and charges that even if the argument had been raised the detriments would outweigh the possible benefits of fighting the *Frazier* issue in the district and appellate courts along with all the existing charges. Based on the

lack of a record before us, it is not proper for us to speculate on facts that may or may not have been a part of the plea negotiations.

"We decline, under the facts presented to us in this case to rule that *Frazier* must be applied retroactively. To do so would give Wilson a double benefit, a favorable plea agreement and then the benefit of an issue he initially failed to raise on appeal." 31 Kan. App. 2d at 734.

In his petition for review, Bryant reiterates the argument that there is a distinction between a collateral attack on a conviction and a collateral attack on a sentence. Bryant does not contend that he is guilty of an offense other than the offense for which he entered a plea, or argue that the sentence imposed was not appropriate for the offense; instead, he emphasizes that he did not knowingly waive his right to receive the appropriate sentence.

In support of this position, Bryant cites *Carmichael v. State*, 255 Kan. 10, 872 P.2d 240 (1994); *LaBona v. State*, 255 Kan. 66, 872 P.2d 271 (1994); *State v. Heywood*, 245 Kan. 615, 783 P.2d 890 (1989); and *Barnes*. Carmichael collaterally attacked his jury convictions based on an intervening appellate decision, and the court held that, under such circumstances, Carmichael should be resentenced for a more specific offense. 255 Kan. at 11, 19. LaBona, on the same ground as Carmichael, collaterally attacked the convictions he pled guilty to, and the court held that, under these circumstances, LaBona had waived his right to do so. 255 Kan. at 66, 69-70. While Heywood's direct appeal from a guilty plea was pending, the court remanded Heywood's case for resentencing in light of an intervening appellate decision. 245 Kan. at 616. Likewise, Barnes' case was remanded for resentencing in accordance with *McAdam* because it was pending on direct appeal when *McAdam* was decided. *Barnes*, 278 Kan. at 129.

Bryant reasons that Carmichael, Heywood, and Barnes prevailed because they had not waived the right they sought; LaBona, on the other hand, by pleading guilty, waived the right to collaterally attack his convictions. Carmichael, according to Bryant, had not waived his right because he had been convicted by a jury rather than pleading guilty. Bryant argues that Heywood and Barnes had not waived their rights when they had pled guilty because they were attacking the sentences imposed rather than their convictions.

Bryant asserts that in *Barnes* this court "held that a defendant does not waive a *McAdam* claim by pleading guilty."

Bryant's interpretation of *Barnes* is at odds with the court's statements. The holding in *Barnes*, in fact, was "that the decision in *McAdam* should be applied to Barnes' case since it was *pending on appeal* at the time of the decision in *McAdam*." (Emphasis added.) 278 Kan. at 129. *Heywood* was cited in *Barnes* because the procedural histories of the two cases were the same, *i.e.*, both were pending direct appeals, and the court concluded that, "under *Heywood*, the appropriate disposition would be to remand for resentencing." 278 Kan. at 128. Although it did not directly state reasons why, the *Barnes* court clearly stated that a direct appeal and a collateral proceeding warrant different treatment. Rejecting the State's request in *Barnes* that it follow the reasoning from *Wilson*, the court stated: "Because this case is not a collateral attack, much of the *Wilson* court's analysis is inapplicable here. The question presented in this case is not whether the *McAdam* rule can be asserted in a collateral attack." 278 Kan. at 127.

Bryant insists, however, that it should not matter whether a direct appeal or collateral attack brings a question to the court. The key is waiver. Bryant categorizes himself with Barnes and Heywood as not having waived the right to receive an appropriate sentence. In fact, we note Bryant did waive a challenge to his sentence by not appealing the sentence, whereas by appealing their sentences, Barnes and Heywood had preserved their challenges.

Bryant cites *Reed v. Hannigan*, 295 F.3d 1061 (10th Cir. 2002), for the distinction between a collateral attack of a conviction following trial and a guilty plea. Reed pled guilty to indecent liberties with a child based on an incident with his stepdaughter. 295 F.3d at 1062. Later, this court decided *State v. Williams*, 250 Kan. 730, 829 P.2d 892 (1992), which held that the more specific crime of aggravated incest was applicable where the victim and perpetrator were related. The statutory penalty for indecent liberties with a child was greater than that for aggravated incest. Thus, what Reed sought in his collateral challenge was a reduction of his sentence.

Judge Briscoe, writing for the 10th Circuit Court of Appeals, contrasted the effect of *Williams* in *Carmichael* and *LaBona*:

"In *Carmichael v. State*, 255 Kan. 10, 872 P.2d 240, 247 (1994), the court held that the rule announced in *Williams* was not jurisdictional, and the proper post-conviction remedy for a defendant challenging a rape conviction, where the defendant was related to the victim, was to vacate the sentence for the crime of rape and remand for resentencing for the crime of aggravated incest. In contrast, in *LaBona v. State*, 255 Kan. 66, 872 P.2d 271, 273 (1994), the court held that a defendant who voluntarily pled guilty to the crime of indecent liberties with a child waived the right to challenge that conviction by asserting he could only be charged with aggravated incest. Reiterating that its ruling in *Williams* was not jurisdictional or constitutional in nature, the court held that a defendant who pled guilty acquiesced in his conviction for indecent liberties and would not be resentenced under the penalty provisions applicable to aggravated incest. *Id.* at 272-74." 295 F.3d at 1063.

The 10th Circuit noted that, based on *Williams* and *Carmichael*, Reed sought collateral review of his sentence in the trial court. "The state trial court held, and the Kansas Court of Appeals affirmed, that petitioner had waived any challenge to his sentence when he pled guilty to the crime of indecent liberties with a child." 295 F.3d at 1063. The 10th Circuit noted that the state court decision

"is not contrary to clearly established federal law as the United States Supreme Court has approved similar holdings on many occasions. *See, e.g., United States v. Broce*, 488 U.S. 563, 570-74, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989) (holding habeas petitioners waived double jeopardy challenge by pleading guilty to separate charges, despite later court ruling that such charges would have been impermissible); *Tollett v. Henderson*, 411 U.S. 258, 265-67, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973) (holding guilty plea waived all challenges to deprivations of constitutional right that antedated plea such as infirmities in the composition of the grand jury)." 295 F.3d at 1063-64.

With regard to Reed's additional arguments, Judge Briscoe wrote:

" '[A] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.' *Broce*, 488 U.S. at 574, 109 S. Ct. 757 (quotation omitted). At the time petitioner was charged, it was legally permissible to charge petitioner with indecent liberties rather than aggravated incest, *see State v. Hutchcraft*, 242 Kan. 55, 744 P.2d 849 (1987), *overruled in relevant part by Williams*, 829 P.2d at 897, and thus petitioner's plea was not an unlawful plea. *See Broce*, 488 U.S. at 572-73, 109 S. Ct. 757 (noting that absent impermissible state conduct, 'a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty

premise,' and holding that a petitioner need not know of the potential defense to waive it) (quotation omitted). For the same reason, petitioner's attorney was not ineffective for failing to predict a judicial ruling that would not be announced until 1992, and further, this later judicial ruling did not render petitioner's prior plea unknowing and involuntary. *See Baker v. State,* 20 Kan. App. 2d 807, 894 P.2d 221, 223-24 (1995).

"Moreover, the fact that a petitioner who has pled guilty is treated differently than a petitioner who was tried and convicted by a jury does not violate equal protection because the petitioners are not similarly situated. *See Stephens v. Thomas,* 19 F.3d 498, 501 (10th Cir. 1994) ("If the groups are not similarly situated, there is no equal protection violation.") (quoting *United States v. Woods,* 888 F.2d 653, 656 (10th Cir. 1989)). Unlike an accused who elects to go to trial, a defendant who pleads guilty admits violating the statute charged and thereby waives his potential defenses. *See Broce,* 488 U.S. at 569, 109 S. Ct. 757." 295 F.3d at 1064.

Although *Reed* is an instructive review of Kansas law on collateral challenges, it does not favor Bryant's view that he is a candidate for postconviction relief.

*McAdam* can be distinguished from *Williams* because *McAdam* did not establish a "new rule of law" but rather applied principles enunciated in *Nunn* and *Clements* to existing statutes. *Barnes,* 278 Kan. at 127. Because *McAdam* merely clarified existing law rather than establishing new law, *i.e.,* the *McAdam* "rule" was the correct interpretation of Kansas law at the time Bryant's conviction and sentence became final.

In addition, in *Fiore v. White,* 531 U.S. 225, 148 L. Ed. 2d 629, 121 S. Ct. 712 (2001), a habeas corpus action, the United States Supreme Court considered whether Fiore's Pennsylvania jury conviction for operating a hazardous waste facility without a permit was inconsistent with the federal Due Process Clause. Fiore had a permit but had been prosecuted on the theory that he "had deviated so dramatically from the permit's terms that he nonetheless had violated the statute." 531 U.S. at 227. After Fiore's conviction became final, the Pennsylvania Supreme Court in *Commonwealth v. Scarpone,* 535 Pa. 273, 634 A.2d 1109 (1993), considered the statute and concluded that a person who deviated from his or her permit's terms was not a person without a permit within the meaning of the statute. 531 U.S. at 227. In response to a certified question, the Pennsylvania Supreme Court stated that *Scarpone* merely

clarified existing law and did not announce a new rule of law. 531 U.S. at 228. The United States Supreme Court stated:

"The Pennsylvania Supreme Court's reply specifies that the interpretation of § 6018.401(a) set out in *Scarpone* 'merely clarified' the statute and was the law of Pennsylvania—as properly interpreted—at the time of Fiore's conviction. Because *Scarpone* was not new law, this case presents no issue of retroactivity. Rather, the question is simply whether Pennsylvania can, consistently with the Federal Due Process Clause, convict Fiore for conduct that its criminal statute, as properly interpreted, does not prohibit.

"This Court's precedents make clear that Fiore's conviction and continued incarceration on this charge violate due process. We have held that the Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt. See *Jackson*, 443 U.S., at 316; *In re Winship*, 397 U.S. 358, 364[, 90 S. Ct. 1068, 25 L. Ed. 2d 368] (1970). In this case, failure to possess a permit is a basic element of the crime of which Fiore was convicted. *Scarpone, supra*, at 279, 634 A.2d, at 1112. And the parties agree that the Commonwealth presented no evidence whatsoever to prove that basic element. To the contrary, the Commonwealth, conceding that Fiore did possess a permit, . . . necessarily concedes that it did not prove he failed to possess one.

"The simple, inevitable conclusion is that Fiore's conviction fails to satisfy the Federal Constitution's demands." 531 U.S. at 228-29.

Paraphrasing *Fiore* in the circumstances of the present case, we would say that *McAdam* merely clarified the law and was the law of Kansas—as properly interpreted—at the time of Bryant's conviction and sentencing. Because *McAdam* was not new law, but merely a clarification of the existing law, this case presents no issue of retroactivity. Rather, when applying *Fiore*, the question is simply whether Kansas can sentence Bryant inconsistently with its own law without violating the federal Constitution.

Pennsylvania had convicted Fiore of a crime without proving all the elements of it, which the Due Process Clause of the Fourteenth Amendment forbids a State to do. The circumstances are quite different in the present case. Here there is no claim that the State convicted Bryant of a crime without proving all the elements. Instead, Bryant claims that he is entitled to a lesser sentence because the offense he pled guilty to and a second offense having a lesser penalty had identical elements.

Bryant has no right under either the Equal Protection or the Due Process Clause of the Fourteenth Amendment to the lesser sentence when the crime of conviction and another crime have the same elements. In support of our decision, we note that in *United States v. Batchelder*, 442 U.S. 114, 60 L. Ed. 2d 755, 99 S. Ct. 2198 (1979), Batchelder was convicted of violation of one of two federal statutes that prohibit a convicted felon from receiving a firearm that has traveled in interstate commerce. Batchelder was convicted and sentenced under the statute carrying the greater penalty. The question before the United States Supreme Court was "whether a defendant convicted of the offense carrying the greater penalty may be sentenced only under the more lenient provision when his conduct violates both statutes." 442 U.S. at 116. The Supreme Court concluded that a criminal defendant has no federal constitutional right to be sentenced under the more lenient provision. 442 U.S. at 125.

Likewise, there are no state constitutional constraints noted in *McAdam* or the cases on which *McAdam* is based, *State v. Clements*, 241 Kan. 77, 83, 734 P.2d 1096 (1987), and *State v. Nunn*, 244 Kan. 207, 229, 768 P.2d 268 (1989). The basis for the decisions in *Clements* and *Nunn* was that the determination of "which penalty to seek cannot be a matter of prosecutorial whimsy in charging." 241 Kan. at 83. *Clements* and *Nunn* were direct appeals; nothing in those decisions requires application of the rule to cases on collateral review.

Many distinctions are drawn by the courts in determining the justiciability of postconviction challenges. For example, guilty pleas are distinguished from convictions following trial, new law is distinguished from mere clarification, and constitutional requirement is distinguished from a rule otherwise imposed. The distinction urged by Bryant between a collateral challenge on a conviction and one on a sentence, however, is not manifest in the authorities he cites.

Bryant's final argument is that, if his collateral attack on his sentence is unsuccessful because he pled guilty and did not prosecute a direct appeal, he will seek to perfect a direct appeal out of time. He predicts that his appeal will be allowed pursuant to *State v.*

*Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982), and *State v. Willingham*, 266 Kan. 98, 101, 967 P.2d 1079 (1998), because he will be able to show that he was not informed of his right to appeal. Once his appeal is pending, he will be entitled to seek relief he claims is available pursuant to *Barnes*. The possibility that there is that an alternative means to the end Bryant seeks does not strengthen his principal argument in this appeal.

The Court of Appeals and district court are affirmed.

LOCKET, J., Retired, assigned.